UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV19-05449 JAK (JPRx) | Date | December 2, 2019 |
| Title | Soundgarden, et al. v. UMG Recordings, Inc. | | |

| | |
|---|---|
| Present: The Honorable | JOHN A. KRONSTADT, UNITED STATES DISTRICT JUDGE |
| Andrea Keifer | Not Reported |
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

**Proceedings:** (IN CHAMBERS) ORDER RE DEFENDANT UMG RECORDINGS, INC.'S NOTICE OF MOTION AND MOTION TO STAY DISCOVERY (DKT. 28)

DEFENDANT UMG RECORDINGS, INC.'S REQUEST FOR LEAVE TO FILE A SUPPLEMENTAL BRIEF IN SUPPORT OF ITS MOTION TO DISMISS THE FAC, RESPONDING TO COURT'S QUESTIONS CONCERNING UNPLED CLAIMS (DKT. 54)

DEFENDANT UMG RECORDINGS, INC.'S EX PARTE APPLICATION FOR A STAY OF MAGISTRATE JUDGE ROSENBLUTH'S NOVEMBER 14 DISCOVERY RULING PENDING CONSIDERATION OF PARTIES' CAFA JURISDICTIONAL SUBMISSION AND UMG'S UNDER-SUBMISSION MOTIONS (DKT. 59)

### I. Introduction

Soundgarden, Tom Whalley, Jane Petty and Steve Earle brought this action against UMG Recordings, Inc. ("UMG"). Plaintiffs are artists whose Master Recordings were damaged, or others who are the alleged owners, assignees or successors in interest of such rights. The claims arise from damage caused by a fire on June 1, 2008, at the Universal Studios backlot. The First Amended Class Action Complaint ("FAC" (Dkt. 25)) alleges that the fire damaged the recordings of certain music ("Master Recordings") that were stored in a warehouse leased by UMG at that location (the "UMG Warehouse"). The FAC also alleges that UMG recovered $150 million through litigation and insurance claims that were pursued due to the fire based on the damage to the Master Recordings. The FAC advances six causes of action: (i) Breach of Contract; (ii) Breach of Bailment Contract[1]; (iii) Negligence; (iv) Reckless Conduct; (v) Conversion; and (vi) Misrepresentation by Omission.[2]

UMG filed a Motion to Stay Discovery in this action (the "Motion to Stay" (Dkt. 28)) pending a ruling on

---

[1] This cause of action also refers to the implied covenant of good faith and fair-dealing. Dkt. 25 ¶ 57.
[2] The FAC mis-numbered this as the Seventh Cause of Action.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV19-05449 JAK (JPRx) | Date | December 2, 2019 |
| Title | Soundgarden, et al. v. UMG Recordings, Inc. | | |

its motion to dismiss the FAC (the "Motion to Dismiss"). Dkt. 36.[3] UMG also filed a Request for Judicial Notice. Dkt. 28-11. Plaintiffs filed an opposition to the Motion to Stay. Dkt. 38. UMG filed a reply in support of the Motion to Stay. Dkt. 35. Plaintiffs filed an opposition to the Motion to Dismiss. Dkt. 38. UMG filed a reply. Dkt. 39.

A hearing was conducted on the Motion to Stay and the Motion to Dismiss on November 4, 2019. Dkt. 46. The Motion to Stay and the Motion to Dismiss were taken under submission. Only the Motion to Stay is addressed in this Order.

On November 14, 2019, UMG filed a "Request for Leave to File a Supplemental Brief in Support of its Motion to Dismiss the FAC, Responding to Court's Questions Concerning Unpled Claims" (the "UMG Request"). Dkt. 54. Plaintiffs filed a "Response and Objection to the Request" (the "Plaintiffs' Objection"). Dkt. 58.

On November 14, 2019, Magistrate Judge Rosenbluth granted-in-part Plaintiffs' Motion to Compel Discovery from Defendant (the "Motion to Compel" (Dkt. 42)). Dkt. 53 (the "Discovery Order"). On November 18, 2019, UMG filed an "Ex Parte Application for a Stay of Magistrate Judge Rosenbluth's November 14 Discovery Ruling Pending Consideration of Parties' CAFA Jurisdictional Submission and UMG's Under-Submission Motions" ("UMG Application"). Dkt. 59. Plaintiffs filed an opposition to the UMG Application ("Plaintiffs' Opposition"). Dkt. 60.

For the reasons stated in this Order, the UMG Request for Judicial Notice in Support of the Motion to Stay is **GRANTED**, the Motion to Stay is **DENIED**, the UMG Request is **DENIED**, and the UMG Application is **DENIED**.

II.     **Request for Judicial Notice in Support of the Motion to Stay (Dkt. 28-11)**

UMG requests judicial notice of the following documents in support of the Motion to Stay. Dkt. 28-11.

> **Exhibit 1** -- UMG Recordings, Inc. v. NBCUniversal Media LLC, L.A. Superior Court No. 106213 (Second Amended Complaint)
> **Exhibit 2** -- UMG Recordings, Inc. v. NBCUniversal Media LLC, L.A. Superior Court No. 106213 (Opposition to Motion in Limine No. 6)
> **Exhibit 3** -- UMG Recordings, Inc. v. NBCUniversal Media LLC, L.A. Superior Court No. 106213 (Declaration Supporting Motion in Limine No. 2)
> **Exhibit 4** -- UMG Recordings, Inc. v. NBCUniversal Media LLC, L.A. Superior Court No. 106213 (Opposition to Defendants' Motion for Summary Judgment)
> **Exhibit 5** -- UMG Recordings, Inc. v. NBCUniversal Media LLC, L.A. Superior Court No. 106213, Docket
> **Exhibit 6** -- Vivendi S.A. v. AXA Insurance Co., No. 2:09-cv-08893 (C.D. Cal.), Docket
> **Exhibit 7** -- Jody Rosen, The Day the Music Burned, N.Y. TIMES MAGAZINE (June 11, 2019)
> **Exhibit 8** -- Universal Music Group, Inc. Code of Conduct, dated May 2016, available at

---

[3] Defendant's Request for Leave to File Supplemental Declaration of Scott A. Edelman in Support of the Motion to Stay (Dkt. 30) was granted. Dkt. 33.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV19-05449 JAK (JPRx) | Date | December 2, 2019 |
|---|---|---|---|
| Title | Soundgarden, et al. v. UMG Recordings, Inc. | | |

http://www.universalmusic.com/wp-content/uploads/2018/03/Code-of-Conduct.pdf Dkt. 28-11 at 2.

Fed. R. Evid. 201(b) provides that a court "may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." A court "may take judicial notice of 'matters of public record.'" *Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001) (quoting *Mack v. South Bay Beer Distrib.*, 789 F.2d 1279, 1282 (9th Cir. 1986)). Matters of public record include "documents on file in federal or state courts." *Harris v. Cty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012).

Judicial notice of publications introduced to "indicate what was in the public realm at the time, not whether the contents of those articles were in fact true" may be appropriate under Fed. R. Evid. 201(b). *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010) (quoting *Premier Growth Fund v. Alliance Capital Mgmt.*, 435 F.3d 396, 401 n.15 (3d Cir. 2006)); *see also In re Am. Apparel, Inc. Shareholder Derivative Litig.*, No. CV 10-06576 MMM, 2012 WL 95606072, at *17-19 (C.D. Cal. July 31, 2012) (Morrow, J.) (judicial notice of news reports and press releases for market awareness and considering similar articles as incorporated by reference into complaint).

Exhibits 1-6 are court filings. Judicial notice of these documents is appropriate under Fed. R. Evid. 201(b) because they are matters of public record. *See Harris*, 683 F.3d at 1132. Exhibit 7 is a newspaper article of which judicial notice is proper for the limited purpose of showing information available in the public realm at a particular time. *See Von Saher*, 592 F.3d at 960. Moreover, it is incorporated by reference by the FAC, which includes quotations from the article. Dkt. 25 ¶ 21. Exhibit 8 is UMG's Code of Conduct from May 2016. It is incorporated by reference by the FAC, which quotes from, and cites the document. Dkt. 25 ¶¶ 59, 61; *see also* Dkt. 38 (Plaintiffs' opposition stating that paragraphs 59 and 61 of the FAC include language from the UMG Code of Conduct).

For the foregoing reasons, the Request for Judicial Notice in Support of the Motion to Stay is **GRANTED**.

### III. Factual and Procedural Background

#### A. Allegations as to the Parties in the FAC

Soundgarden is a partnership among Kim Thayil, Matt Cameron and Ben Shepherd. Dkt. 25 ¶ 7. Soundgarden is the name of an American rock band that was established in 1984 in Seattle, Washington. The FAC alleges that Master Recordings of Soundgarden's music were stored in the UMG Warehouse and destroyed during the 2008 fire. *Id.*

Tom Whalley is the trustee of the Afeni Shakur Trust. Dkt. 25 ¶ 8. The FAC alleges that, as the trustee, Whalley is the "owner, assignee, and successor in interest to all contractual rights of the artist Tupac Shakur ("Tupac") at issue in this action." *Id.* The FAC alleges that Master Recordings of Tupac's music were stored in the UMG Warehouse and destroyed during the 2008 fire. *Id.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV19-05449 JAK (JPRx) | Date | December 2, 2019 |
|---|---|---|---|
| Title | Soundgarden, et al. v. UMG Recordings, Inc. | | |

Jane Petty was formerly married to Tom Petty. Dkt. 25 ¶ 9. It is alleged that Tom Petty was an "American singer/songwriter, multi-instrumentalist, record producer and actor, as well as the lead singer of Tom Petty and [the] Heartbreakers." *Id.* The FAC alleges that as part of the 1996 divorce proceedings between the two, Tom Petty "assigned and transferred to Jane by written assignment an undivided 50% interest to his then-existing intellectual property." *Id.* The FAC alleges that Master Recordings of Tom Petty "embodying the musical works of Petty co-owned by Jane or subject to recording agreements under which Jane has rights to receive royalties" were stored in the UMG Warehouse and destroyed during the 2008 fire. *Id.*

Steve Earle is an American singer. Dkt. 25 ¶ 10. The FAC alleges that Master Recordings embodying the musical works of Earle were stored in the UMG Warehouse and destroyed during the 2008 fire. *Id.*

Defendant UMG Recordings, Inc. is alleged to be a Delaware corporation whose principal place of business is in Los Angeles County. Dkt. 25 ¶ 11.

The FAC defines the proposed class as follows:

> All persons or entities, and their heirs, successors and assigns, who entered into recording agreements with UMG providing for a sharing of revenues derived from use or exploitation of Master Recordings embodying their musical works, which Master Recordings were stored in a warehouse leased by UMG at the Universal Studios backlot and destroyed in a fire on or about June 1, 2008, or such persons or entities with Master Recording revenue-sharing contracts whose Master Recordings, whether or not actually destroyed, were among those that UMG claimed were destroyed or lost in the Fire in order to recover insurance or litigation proceeds.

Dkt. 25 ¶ 30.

  B.  Substantive Allegations in the FAC

    1.  <u>Factual Allegations</u>

The FAC alleges that UMG stored the Master Recordings "as well as original video recordings, artwork, and other valuable materials related to Plaintiffs' recording sessions" in the UMG Warehouse on the Universal Studios backlot. Dkt. 25 ¶ 14. As noted, it also alleges that, on June 1, 2008, the UMG Warehouse was "completely destroyed in a fire." *Id.* ¶ 17. The FAC alleges that the fire destroyed all of the relevant Master Recordings. *Id.* ¶ 20. The FAC alleges that UMG stored the Master Recordings in "an inadequate, substandard storage warehouse located on the backlot of Universal Studies that was a known firetrap." *Id.* ¶ 4.

The FAC alleges that UMG "concealed the loss with false public statements" and has still "failed to inform Plaintiffs whether any of their Master Recordings were destroyed in the fire." Dkt. 25 ¶ 4. The FAC alleges that UMG engaged in a "systematic and fraudulent scheme of misrepresentation and misdirection designed to conceal the loss of the Master Recordings destroyed in the [f]ire." *Id.* ¶ 23.

The FAC alleges that UMG pursued litigation and made claims with certain insurers to seek to "recoup

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV19-05449 JAK (JPRx) | Date | December 2, 2019 |
|---|---|---|---|
| Title | Soundgarden, et al. v. UMG Recordings, Inc. | | |

what UMG itself alleged to be the value of the lost Master Recordings." Dkt. 25 ¶ 5. The FAC alleges that UMG valued the litigation and insurance claims at $150 million. *Id.* The FAC alleges that UMG recovered on these claims, but did not share any portion of that amount with Plaintiffs. *Id.* Plaintiffs allege that they are entitled to a portion of "any UMG proceeds from any uses or exploitations of any Master Recordings -- which would necessarily include the insurance and litigation recoveries." *Id.*

The FAC alleges than an article by Jody Rosen, which was published in June 2019 in the *New York Times Magazine*, stated that the 2008 fire had caused far greater damage to the Master Recordings than previously disclosed by UMG (the "Rosen Article"). Dkt. 25 ¶ 21. The Rosen Article stated that those whose Master Recordings were damaged included "dozens of legendary artists, a genre-spanning who's who of 20th- and 21st-century popular music." *Id.* ¶ 22. This allegedly included works by Soundgarden, Tupac, Petty and Earle. *Id.*

The FAC alleges that UMG "has not fully informed Plaintiffs whether any Master Recordings embodying their musical works owned by them were destroyed in the fire, and has not yet disclosed or accounted to Plaintiffs for settlement proceeds and insurance payments received by UMG for the loss of the Master Recordings." Dkt. 25 ¶ 25.

The FAC alleges that the relevant contracts between UMG and Soundgarden, Petty, Earle and Tupac provide that Plaintiffs are entitled to a portion of the litigation and insurance recoveries related to the Master Recordings. The alleged, relevant contractual terms concern the following matters: (i) ownership of the Master Recordings; (ii) licensing of the Master Recordings; and (iii) royalties paid from the proceeds of use or exploitation of the Master Recordings. *See* Dkt. 25-1 at 2-84 (Tupac Contracts); Dkt. 25-2 at 9-19 (Soundgarden Contract); Dkt. 25-3 at 13-17 (Earle Contract); Dkt. 25-4 at 13-18 (Petty Contract).

      2.      <u>Causes of Action</u>

*Breach of Contract - Revenue Sharing.* The FAC alleges that UMG breached the revenue-sharing provisions of the relevant contracts between Plaintiffs and UMG or its predecessors. Dkt. 25 ¶¶ 37-50. The basis for this claim is the allegation that the contracts entitle Plaintiffs to the proceeds from the litigation and insurance recoveries received by UMG due to the damage caused by the 2008 fire. *Id.*

*Breach of Contract - Bailment.* The FAC alleges that UMG breached a bailment contract with respect to the Master Recordings. In support of this claim, the FAC alleges that UMG breached its duty of care as to the Master Recordings of which it had physical possession, and in which Plaintiffs had an alleged reversionary interest. Dkt. 25 ¶¶ 51-57. The FAC also alleges a breach of the Implied Covenant of Good Faith and Fair Dealing as to this alleged bailment contract. *Id.* ¶ 57.

*Negligence.* The FAC alleges that UMG breached a duty of care owed to Plaintiffs to exercise reasonable care in maintaining and storing the Master Recordings. Dkt. 25 ¶¶ 58-63. The basis for this claim is that UMG allegedly ignored safety and fire hazards associated with the UMG Warehouse. *Id.*

*Reckless Conduct.* The FAC alleges that UMG engaged in reckless conduct with respect to its storage of the Master Recordings in the UMG Warehouse. Dkt. 25 ¶¶ 64-70. The basis for this claim is that UMG allegedly recognized the significant fire risks at the UMG Warehouse, but ignored them. *Id.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV19-05449 JAK (JPRx) | Date | December 2, 2019 |
|---|---|---|---|
| Title | Soundgarden, et al. v. UMG Recordings, Inc. | | |

*Conversion*. The FAC alleges that UMG is liable for Conversion. Dkt. 25 ¶¶ 71-75. The basis for this claim is that UMG allegedly received monetary recovery for the litigation and insurance claims, but did not share with Plaintiffs that portion to which each had a legal right. *Id.*

*Misrepresentation by Omission*. The FAC alleges that UMG is liable for misrepresentation by omission. Dkt. 25 ¶¶ 76-82. The basis for this claim is that UMG allegedly knew about the safety and fire risks of the UMG Warehouse, but failed to disclose them to Plaintiffs. *Id.* The FAC next alleges that this nondisclosure caused Plaintiffs to continue to store Master Recordings at the UMG Warehouse instead of moving them to a more suitable, alternative storage site. *Id.*

   C.  Evidence in Support of the Motion to Stay

The Declaration of Scott A. Edelman was filed in support of the Motion to Stay (the "Edelman Declaration"). Dkt. 28-2. Attached to the Edelman Declaration are copies of several email communications to Plaintiff's Counsel that concern the Master Recordings and the findings of an investigation by UMG with respect to the damage caused by the 2008 fire. One of these emails states that no Master Recordings of the work of Earle were lost due to the 2008 fire. Dkt. 28-4 at 2. Another states that no Master Recordings of Petty were lost due to the fire. Dkt. 28-5 at 2. A third states that no Master Recordings of Tupac were lost due to the fire. Dkt. 28-6.

A Supplemental Declaration of Scott A. Edelman was filed in support of the Motion to Stay (the "Supplemental Declaration"). Dkt. 30-1. Attached to the Supplemental Declaration are copies of several email communications related to Soundgarden's Master Recordings. One states that two Master Recordings of Soundgarden were lost in the fire, but that UMG was able to issue a re-release of that album using a digital copy. Dkt. 30-1 at 7-8. That email also states that no other "multitrack masters" were affected by the fire and that, as to affected ones, "UMG has fully viable copies of all of the affected assets except an alignment tones reel." *Id.* Several other communications include emails with a member of Soundgarden about the loss of certain Master Recordings. *See* Dkt. 30-1 at 3.

   D.  The Discovery Order

On October 24, 2019, Plaintiffs filed the Motion to Compel. Dkt. 42. On November 14, 2019, Judge Rosenbluth held a hearing on the Motion to Compel. Dkts. 52-53. The Motion to Compel was granted-in-part. Dkt. 53. The Discovery Order required the parties to lodge a proposed stipulated protective order on or before November 20, 2019. *Id.* Within 10 days of when the Court entered that protective order, Defendant was required to produce supplemental responses to Interrogatory 2 and Requests for Production ("RFP") 2 and 4. Within 21 days of the entry of the protective order, Defendant was ordered to produce its supplemental response to RFPs 32 and 34. *Id.* The proposed stipulated protective order was lodged on November 20, 2019. Dkt. 61. The stipulated protective order was entered on November 22, 2019. Dkt. 63.

Interrogatory 2 calls for UMG to "Identify all artists with master recordings that UMG claimed, asserted, or implied in any prior litigation, in any insurance dispute, or in connection with settlements of litigation or insurance disputes, were, or may have been, damaged or lost in, by, or as a result of the June 1, 2008 fire on the NBCUniversal lot." Dkt. 42-2 at 10.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV19-05449 JAK (JPRx) | Date | December 2, 2019 |
| Title | Soundgarden, et al. v. UMG Recordings, Inc. | | |

RFP 2 requests production of "[a]ll expert materials of Larry Gerbrandt, including but not limited to expert reports, RELATING TO the FIRE CASE." Dkt. 42-2 at 18. RFP 4 requests "an unredacted copy of the 'Gods List' referred to in the Opposition to Defendants' Motion In Limine No. 4 in the FIRE CASE." *Id.* at 19. RFP 32 requests "Any and all DOCUMENTS produced by YOU to NBCUniversal Media LLC in the FIRE CASE." *Id.* at 20. RFP 34 requests "Any and all DOCUMENTS produced by YOU to AXA Ins. Co. in the INSURANCE CASE." *Id.*

### IV.    Motion to Stay

####       A.    Legal Standards

A court has "broad discretion to stay discovery pending the outcome of a potentially dispositive motion." *Top Rank, Inc. v. Haymon*, 2015 WL 9952887, at *1 (C.D. Cal. Sept. 17, 2015) (antitrust case) (citing *Skellerup Indus. Ltd. v. City of Los Angeles*, 163 F.R.D. 598, 600 (C.D. Cal. 1995)). "A party seeking a stay of discovery carries a heavy burden of making a 'strong showing' why discovery should be denied." *Skellerup*, 163 F.R.D. at 600. A "case-by-case analysis is required." *Amey v. Cinemark USA Inc.*, No. 13-06248 MMM (CWx), 2013 WL 12143815, at *2 (C.D. Cal. Oct. 18, 2013) (quoting *Skellerup*, 163 F.R.D. at 601).

Several factors may be considered in determining whether such a stay of discovery is appropriate: "whether the motion is potentially dispositive of the entire case or dispositive of the issues on which discovery is sought"; "whether the pending motion can be decided without additional discovery"; "whether, upon a preliminary analysis of the merits of the motion there appears to be an immediate and clear possibility that it will be granted"; "the nature and complexity of the action"; "the posture or stage of the litigation"; and "any other relevant circumstances." *Amey*, 2013 WL 12143815, at *2 (citing *GYE Wireless, Inc. v. Qualcomm, Inc.*, 192 F.R.D. 284, 286 (S.D. Cal. 2000); *Skellerup*, 163 F.R.D. at 601). A court may stay discovery pending a decision on a motion to dismiss "when it is convinced that the plaintiff will be unable to state a claim for relief." *Wenger v. Monroe*, 282 F.3d 1068, 1077 (9th Cir. 2002) (citing *Wood v. McEwen*, 644 F.2d 797, 801 (9th Cir. 1981) (per curiam)); *see also Vysata v. Menowitz*, No. CV 18-06157 JAK (RAO), 2019 WL 1578374, at *2 (C.D. Cal. Feb. 1, 2019).

####       B.    Application

As noted, the FAC presents several distinct, substantive claims that rely on different legal bases for the relief sought. Significant issues also have been presented by the pending Motion to Dismiss. However, given the nature of the fact-based claims and that leave to amend is often permitted if a motion to dismiss is granted, at present, this is not a matter in which the Court is presently "convinced that the plaintiff will be unable to state a claim for relief." *Cf. Amey*, 2013 WL 12143815, at *2; *Wenger*, 282 F.3d at 1077.[4]

The evidence presented through the Edelman Declaration and the Supplemental Declaration does not change this conclusion. In general, evidentiary matters are not decided through a motion to dismiss. However, even assuming that this evidence is sufficient to establish that the Master Recordings of Earle, Tupac and Petty were not destroyed in the 2008 fire, the FAC alleges that UMG received

---

[4] This issue will be considered de novo in the subsequent order on the Motion to Dismiss.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV19-05449 JAK (JPRx) | Date | December 2, 2019 |
|---|---|---|---|
| Title | Soundgarden, et al. v. UMG Recordings, Inc. | | |

payments based on "claimed losses of Master Recordings," Dkt. 25 ¶ 43, but that some Master Recordings "previously identified as lost may not have been lost at all." *Id.* ¶ 27. Plaintiffs maintain that, "[i]f UMG recovered money premised on alleged losses of a recording, the contract terms require those sums derived from master recordings to be shared. If it turns out that UMG in fact sought and received recoveries on master recordings it did not really confirm were lost, this is not a reason to deny Plaintiffs' recovery." Dkt. 38 at 16. Thus, at present there is a facial basis for the claims alleged even if certain Master Recordings were not actually damaged by the 2008 fire.

The outcome is the same as to the 2015 and 2016 communications to Soundgarden stating that its Master Recordings were lost. At present, even accepting this factual assertion as true, which as noted is not the norm at this stage of the proceedings, it would not necessarily mean that all claims by Soundgarden are time barred. Thus, the communications with Soundgarden do not state expressly that UMG made no recovery through the litigation or insurance processes related to the 2008 fire based on Soundgarden's Master Recordings. Moreover, whether any such claims are time barred raises issues of tolling because there are allegations of fraudulent concealment by UMG. That doctrine is "fact-intensive" and disposition of that issue "on the pleadings alone" is "generally inappropriate," "particularly when the proof relating to the extent of the fraudulent concealment is alleged to be largely in the hands of the alleged conspirators." *In re Lithium Ion Batteries Antitrust Litig.*, No. 13-md-2420 YGR, 2014 WL 309192, at *16 (N.D. Cal. Jan. 21, 2014). Therefore, the evidence presented as to the timeliness of Soundgarden's claims is an insufficient basis to grant the Motion to Stay.

For the foregoing reasons, the Motion to Stay does not meet the heavy burden necessary to warrant a stay of all discovery pending a decision on the Motion to Dismiss. Therefore, the Motion to Stay is **DENIED**.

V.     **UMG Application**

    A.     Legal Standards

Ex parte relief is warranted only when extraordinary conditions are presented. *See Mission Power Eng'g Co. v. Cont'l Cas. Co.*, 883 F. Supp. 488, 492 (C.D. Cal. 1995). The evidence must show that the moving party "will be irreparably prejudiced if the underlying motion is heard according to regular noticed motion procedures." *Id.* An ex parte application is "justified only when (1) there is a threat of immediate or irreparable injury; (2) there is danger that notice to the other party may result in the destruction of evidence or the party's flight; or (3) the party seeks a routine procedural order that cannot be obtained through a regularly noticed motion (i.e., to file an overlong brief or shorten the time within which a motion may be brought)." *Horne v. Wells Fargo Bank, N.A.*, 969 F. Supp. 2d 1203, 1205 (C.D. Cal. 2013) (Morrow, J.).

The UMG Application seeks a stay of the Discovery Order, without challenging it on the merits. Therefore, the same legal standards stated above apply to the merits of the UMG Application. Once again, a court has "broad discretion" to stay discovery. *Top Rank*, 2015 WL 9952887, at *1. A party seeking a stay carries a "heavy burden of making a 'strong showing' why discovery should be denied." *Skellerup*, 163 F.R.D. at 600. Such an analysis is "case-by-case." *Amey*, 2013 WL 12143815, at *2. Numerous factors may be considered in connection with this evaluation, including whether a "preliminary analysis" of the pending dispositive motion shows an "immediate and clear possibility that it

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV19-05449 JAK (JPRx) | Date | December 2, 2019 |
|---|---|---|---|
| Title | Soundgarden, et al. v. UMG Recordings, Inc. | | |

will be granted," *id.*, and whether the Court is "convinced that the plaintiff will be unable to state a claim for relief," *Wenger*, 282 F.3d at 1077.

      B.    Application

As noted, the Discovery Order sets deadlines for responses to certain interrogatories and requests for the production of documents. The supplemental responses to "interrogatory 2 and RFPS 2 and 4" must be made "no later than 10 days" from the entry of the protective order. Dkt. 53. The supplemental responses to "RFPs 32 and 34" must be made 21 days from the date of the entry of the protective order. *Id.* The protective order was entered on November 22, 2019. Dkt. 63. Therefore, the respective deadlines are December 2, 2019, and December 13, 2019. In light of this schedule, there is not an available date prior to the deadlines to hear a motion to review the Discovery Order. Therefore, it is appropriate to consider the merits of the UMG Application.

UMG presents four principal arguments:

1. A stay is appropriate because the Discovery Order is a de facto denial of the pending Motion to Stay. Dkt. 59 at 9.
2. A stay is appropriate because merits discovery is not appropriate until the Court has determined that it has subject matter jurisdiction under CAFA. Dkt. 59 at 11.
3. A stay is appropriate because the Discovery Order discovery is not required for Plaintiffs to meet the deadline to file a motion for class certification, which can also be continued. Dkt. 59 at 14.
4. A stay is appropriate to allow sufficient time for the Court to decide the proper sequence of any discovery. Dkt. 59 at 16.

None of these positions warrants a stay of the Discovery Order. The first fails because the Motion to Stay has now been denied. The second is not sufficient because some of the requested discovery goes to the jurisdictional issue. For example, interrogatory 2 could identify artists who are alleged to have lost master recordings, which would be relevant to jurisdiction insofar as it shows their locations. *See* Dkt. 42-2 at 10. The third is not compelling because the timing for the filing of such a motion is not the sole justification for the Discovery Order or this Order. The final basis is not sufficient because there is no pending request to bifurcate discovery. Further, the Discovery Order permitted only certain, limited discovery to proceed.

The Discovery Order and associated proceedings reflects that Judge Rosenbluth thoughtfully considered the Parties' competing arguments. These included the burden on UMG in responding to the interrogatories and requests for the production of documents, and the Plaintiffs' competing need for limited discovery with respect to certain pending issues. UMG does not challenge the merits of the Discovery Order. The Discovery Order calls for UMG to provide certain information that is relevant to the claims and jurisdictional issues presented in this matter.

For the foregoing reasons, the UMG Application is **DENIED**.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV19-05449 JAK (JPRx) | Date | December 2, 2019 |
| Title | Soundgarden, et al. v. UMG Recordings, Inc. | | |

### VI.  UMG Request

On November 14, 2019, UMG filed the UMG Request for leave to file a supplemental brief in support of the Motion to Dismiss. Dkt. 54. The UMG Request seeks to respond to two issues raised at the November 4, 2019 hearing: (i) whether a claim for a breach of the implied covenant of good faith and fair dealing was sufficiently pleaded as part of the bailment cause of action; and (ii) whether there is a viable independent cause of action for breach of the implied covenant of good faith and fair dealing. *Id.* at 2. Plaintiffs object to the UMG Request both because it was not invited by the Court, and was filed without any meet and confer process. Dkt. 58 at 2. Plaintiffs also contend that no further briefing on the merits of the Motion to Dismiss is necessary. *Id.*

UMG addressed the sufficiency of the FAC as to an implied covenant claim in the bailment cause of action in the briefing of the Motion to Dismiss and at the hearing. No additional briefing on this issue is necessary. The outcome is the same as to a possible independent cause of action for breach of the implied covenant. That issue was addressed sufficiently in the briefing and at the hearing with respect to the Motion to Dismiss, which is pending.

For the foregoing reasons, the UMG Request is **DENIED**.

### VII.  Conclusion

For the reasons stated in this Order, UMG's Request for Judicial Notice in Support of the Motion to Stay is **GRANTED**, the Motion to Stay is **DENIED**, the UMG Application is **DENIED**, and the UMG Request is **DENIED**.

**IT IS SO ORDERED.**

_____  :  _____

Initials of Preparer   ak