Howard E. King (77012)
hking@khpslaw.com
Henry D. Gradstein (89747)
hgradstein@khpslaw.com
Andres Monserrate (324991)
**KING, HOLMES, PATERNO & SORIANO, LLP**
1900 Avenue of the Stars, 25th Floor
Los Angeles, CA 90067
Telephone: (310) 282-8989

Edwin F. McPherson (106084)
emcpherson@mcpherson-llp.com
Pierre B. Pine (211299)
ppine@mcpherson-llp.com
**MCPHERSON LLP**
1801 Century Park East, 24th Floor
Los Angeles, CA 90067
Telephone: (310) 553-8833

Attorneys for Plaintiffs
(Additional Counsel Listed on Signature Page)

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| SOUNDGARDEN, a Partnership; TOM WHALLEY, as Trustee of the Afeni Shakur Trust; JANE PETTY; STEVE EARLE, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>UMG RECORDINGS, INC., a Delaware corporation,<br><br>Defendant. | CASE NO. 2:19-cv-05449-JAK-JPR<br><br>**PLAINTIFFS' SUPPLEMENTAL MEMORANDUM REGARDING PLAINTIFFS' THIRD MOTION TO COMPEL DISCOVERY FROM DEFENDANT**<br><br>**[DISCOVERY DOCUMENT: REFERRED TO MAGISTRATE JUDGE JEAN P. ROSENBLUTH]**<br><br>Class Cert. Mot. Due:  Jan. 17, 2020<br>Fact Discovery Cutoff: Sept. 14, 2020<br>Pretrial Conference:   TBD<br>Trial Date:            TBD<br><br>**Hearing:**<br>Date:    Mar. 5, 2020<br>Time:    2:30 p.m.<br>Place:   Courtroom 690<br>         Roybal Federal Building and<br>         United States Courthouse<br>         255 E. Temple St.<br>         Los Angeles, CA 90012<br>Judge:   Hon. Jean P. Rosenbluth |

UMG is once again playing games with Plaintiffs and the Court in relation to a discovery dispute. UMG's positions in prior litigation against NBCU and AXA regarding the fire, and the position it apparently plans to take in this case filed against UMG by artists or their successors, are inconsistent. Indeed, UMG's positions set forth in its motion to compel briefing are not even consistent with *UMG's own weeks-old sworn response to the interrogatory centrally in question*. It is time for the Court to put an end to UMG's game-playing, and to order UMG to come clean about the fire losses.

### 1.   UMG Has Not Fully, Nor Accurately, Answered Interrogatory No. 1

Plaintiffs' Interrogatory No. 1 inarguably asked a relevant question: "Identify all artists who had any master recordings damaged or lost in, by, or as a result of the June 1, 2008 fire on the NBCUniversal lot."[1] Plaintiff's relevant and simple question should have received a simple answer. UMG previously told NBCU that "more than 118,000 original music recordings" were lost in the fire. UMG also provided NBCU, as well as its insurer AXA, with access to a database of assets determined to have been lost in the fire—the so-called "God List"—containing nearly 17,000 artist names. UMG should have at least *started* answering Interrogatory No. 1 by identifying (either individually, or by providing a key or explanation related to the database contents) which of the 17,000-some artist names were associated with *master recording* assets in the database.

UMG, however, has made repeatedly clear that it intends to raise questions about the accuracy of the "God List", which it relied on in prior litigations to account for its fire losses, and about its own prior representations in those litigations, in this case. Plaintiffs hope the eventual fact-finder will join them in viewing with healthy skepticism UMG's change of positions between the old cases, in which UMG stood to *make* money, to the current case, in which UMG stands to *lose* money. Nevertheless, during discovery,

---

[1] This information may not necessarily be needed to prove *all* of Plaintiffs' claims (any artist who UMG told NBCU and AXA had lost master recordings in the fire, whether or not actually lost, should be entitled to share in UMG's recoveries from NBCU and AXA), it is unquestionably important to know for other pleaded claims. UMG does not dispute relevance, but rather states only that the loss of a master is "*not necessarily* germane to UMG's ability to commercially exploit the recordings." Resp. at 6.

Plaintiffs *must* be entitled to a clear answer regarding what UMG now believes was lost following its more recent inquiries in response to a *New York Times Magazine* article. Instead of providing the clear answer demanded by the interrogatory, UMG responded with a convoluted explanation and a list of *just 19* artists. This response was as evasive as it was incomplete. *See* Fed. R. Civ. P. 37(a)(4); *Ellis v. Infinite Labs, LLC*, Case No. SACV 13-00241 JLS (ANx), 2014 WL 12617353, at *1 (C.D. Cal. May 1, 2014).

That UMG's response to Interrogatory No. 1 is *incomplete* is easily shown through arithmetic. UMG's response to Interrogatory No. 1, verified by Patrick Kraus, listed 19 artists whose "original master recordings" were "impacted" by the fire. In response to this motion, UMG supplied a declaration from Mr. Kraus.[2] Mr. Kraus now *denies* that two of his own previously-listed artists—R.E.M. and Les Paul—had any "original master recordings" that were "impacted." If this change of heart is to be believed—given the careful wording of the declaration, Mr. Kraus may just be quibbling over UMG's self-selected adjective "*original* master recordings" and its favorite verb "*impacted*," neither of which appeared in Plaintiffs' interrogatory—then UMG has identified so far *just 17* artists who lost master recordings. Yet Mr. Kraus's declaration goes on to explain that UMG has completed review of inquiries from 165 artists regarding whether their "original master recordings" were "impacted," and has concluded that 138 of these artists were not impacted. That leaves 27 artists with "original master recordings" confirmed "impacted," not the 17 (minus R.E.M. and Les

---

[2] UMG's response to this motion appears to rely on Mr. Kraus's declaration to support an assertion that the purpose of the "God List" inquiry was something other than to list the assets that were destroyed in the fire, so that they could perhaps be "matched" with (potentially lesser-quality) backups located elsewhere for digital copying. But Mr. Kraus's declaration says nothing of the sort. Moreover, Mr. Kraus was not a witness in the NBCU or AXA cases. UMG's initial disclosures in this case included his name, but UMG did not indicate that Mr. Kraus was among the nine identified potential witnesses (only *one* of whom is a current UMG employee) with knowledge related to UMG's "efforts to inventory and replace assets impacted by the Fire." Mr. Kraus's LinkedIn page indicates he did not start working at UMG until many years after the fire and post-fire inquiry—he lacks any personal knowledge regarding this key issue.

Paul as Mr. Kraus now suggests) previously identified. Ten artists are therefore plainly missing from the current interrogatory response, based on Mr. Kraus's own analysis.

UMG's interrogatory response, and its submission on this motion, are also evasive. UMG hopes to create a public impression that its limited inquiry since the *New York Times Magazine* publication calls the results of the investigation that resulted in the 100,000+ entry "God List" (as shared with NBCU and AXA) into doubt. But the more recent inquiry proves nothing of the sort. UMG says it has responded to 392 artist inquiries since the publication, completed a review process in response to 165 of those inquiries, and determined that 138 of the artists who inquired did not have any "original master recordings" "impacted." But UMG has not disclosed who these 392, 165, and 138 artists were. It is possible, indeed likely, that UMG received inquiries from artists who never had master recording assets listed on the "God List" in the first place. Thus the more recent inquiry could well be largely *consistent* with the prior investigation.

It is imperative that the Court order UMG to stop hiding behind misleading spin, and start providing real answers. UMG attempts to justify its discovery intransigence by pointing to the undoubted burden that fully re-investigating and re-researching the fire losses would pose. But the same treatise section cited by UMG for the proposition that it should not have to conduct any research to answer Plaintiffs' question goes on to state:

> It would be a mistake, however, to suppose that the fact that answering an interrogatory would require research by the interrogated party is enough to bar the interrogatory in every case. *It is not.* . . . An interrogatory will not be held objectionable as calling for research *if the interrogated party would gather the information in the preparation of its own case*.

Wright & Miller, Fed. Prac. & Proc. § 2174 (3d ed.) (emphasis added). In order to sustain its apparent defense—that materials previously represented to other adversaries as lost were *not* really lost at all—UMG would have no choice but to provide Plaintiffs with detailed information about which *specific master recordings* UMG has searched for, and subsequently located, that were previously reported to NBCU and AXA as lost.

At the upcoming hearing, the Court should inquire for itself whether UMG plans to deny at trial (or perhaps even at the class certification stage) the accuracy of the "God

1. List," or to contend that the universe of artists who lost master recordings in the fire is unknown or unknowable. If UMG plans to make such arguments, the Court should put UMG to a choice: Finish your inquiry promptly and answer the question Plaintiffs asked (for example, by incorporating the "God List" by reference and then separately identifying any previously-listed master recordings which have subsequently been found), or drop these arguments and forgo the cost of answering a relevant question. Other courts have put parties to similar choices in similar circumstances. *See, e.g.*, *Procaps S.A. v. Patheon, Inc.*, 2015 WL 1608807, at *4 (S.D. Fla. Apr. 10, 2015) (requiring antitrust plaintiff to either conduct research and supply the requested information, or agree in writing to refrain from relying on the information). It is outrageous for UMG to make representations to the Court such as "UMG knows today that those postfire working lists were definitively wrong," Resp. at 5, and "many of the assets on this list are on our shelves today," *id.* at 20, while refusing to determine *which ones*.

Not one of UMG's cited cases suggests a different outcome is appropriate here, or that UMG's position—in effect, "you can't prove your case about what was lost, because the results of our own old investigation were wrong, but *we won't tell you* exactly *how* those old investigation results were wrong"—is acceptable. The UMG-cited cases have virtually nothing in common with the situation here. In *Blanton v. Torrey Pines Property Mgmt., Inc.*, No. 15-CV-0892 W (NLS), 2017 WL 1957560, at *4 (S.D. Cal. May 10, 2017), a Fair Housing Act case regarding disparate impact on renter families in the City of El Cajon, the interrogatory unreasonably asked the defendant for information about its properties beyond that city. In *Garcia v. Blahnik*, No. 14cv875-LAB-BGS, 2016 WL 3854584, at *3 (S.D. Cal. Jul. 15, 2016), the interrogatory asked the defendants to describe their work duties, and the defendants answered the question posed in detail. *United States v. $209,815 in U.S. Currency*, No. C 14-0780 SC, 2015 WL 1927431, at *4 (N.D. Cal. Apr. 28, 2015), concerned an interrogatory that asked the claimant to list documents in his possession, and the disputed response made clear that

the claimant had no further documents. Finally, the relevant interrogatory at issue in *Gorrell v. Sneath*, 292 F.R.D. 629, 639 (E.D. Cal. 2013), was from a *pro se* litigant, and asked the defendants to "review *all* possible []DHHS standards [related to drug testing] and compare them with the [requirements of a particular] BOP contract," which the Court concluded would be "burdensome and would produce irrelevant information."

### 2. UMG Must Produce All of the Requested Artist Contracts

It is no moment that UMG has produced "thousands of recording agreements," because the requests in question do not seek recording agreements *generally*. They seek the recording agreements associated with the *specific* master recording assets from the "God List." Those recording agreements are highly relevant, since they contain the specific royalty provisions covering recordings actually, or purportedly, lost in the fire. Unsurprisingly, UMG found no authority supporting its position that, in response to a request for *specific* contracts, it is permissible to perform a document dump from a contract database, and leave it to the requesting party to determine if the requested contracts are in the dump. The only case cited in this part of UMG's motion is *Hardge v. Adams*, No. 1:05-cv-00718 LJO DLB (PC), 2009 WL 410125, at *2 (E.D. Cal. Feb. 17, 2009), in which the court cautioned a *pro se* plaintiff about serving overbroad requests that, for example, had "no limits in terms of time period or scope."

### 3. Plaintiffs Will Update the Court at the Hearing On Other Issues

Plaintiffs thank UMG for, on February 25, 2020, serving a production that according to the accompanying letter contains all of the deposition transcripts and exhibits from the NBCU case. Plaintiffs have also asked UMG to supply the video recordings of these depositions, and await an answer. Although Plaintiffs have not yet had a full opportunity to confirm that the February 25 production was complete, Plaintiffs will update the Court regarding whether there is any remaining dispute as to the prior deposition issues at next week's hearing.

| | |
|---|---|
| Dated: February 27, 2020 | By:  */s/ Steven Sklaver* |

Howard E. King
Henry D. Gradstein
Andres Monserrate
KING, HOLMES, PATERNO & SORIANO, LLP

Edwin F. McPherson
Pierre B. Pine
McPHERSON LLP

Steven G. Sklaver (237612)
ssklaver@susmangodfrey.com
Kalpana D. Srinivasan (237460)
ksrinivasan@susmangodfrey.com
Meng Xi (280099)
mxi@susmangodfrey.com
SUSMAN GODFREY LLP
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (310) 789-3100

Stephen E. Morrissey (187865)
smorrissey@susmangodfrey.com
SUSMAN GODFREY LLP
1201 3rd Avenue, Suite 3800
Seattle, WA 98101
Telephone: (206) 373-7380

Mark H. Hatch-Miller (*pro hac vice*)
mhatchmiller@susmangodfrey.com
SUSMAN GODFREY LLP
1301 Avenue of the Americas 32nd Floor
New York, NY 10019
Telephone: (212) 336-8330

Attorneys for Plaintiffs

# CERTIFICATE OF SERVICE

I hereby certify that on this the 27th day of February, 2020, I have electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system. Notice of this filing will be sent to all parties and counsel of record by operation of the Court's CM/ECF system. All other parties will be served by regular U.S. Mail. Parties may access this filing through the Court's electronic filing system.

/s/   *Steven Sklaver*
      Steven Sklaver

PLAINTIFFS' SUPPLEMENTAL MEMORANDUM REGARDING PLAINTIFFS' THIRD MOTION TO COMPEL DISCOVERY FROM DEFENDANT