UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | LA CV19-05449 JAK (MRWx) | Date | March 29, 2021 |
|---|---|---|---|
| Title | Soundgarden, et al. v. UMG Recordings, Inc. | | |

| Present: The Honorable | JOHN A. KRONSTADT, UNITED STATES DISTRICT JUDGE |
|---|---|
| T. Jackson | Not Reported |
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

**Proceedings:** **(IN CHAMBERS) ORDER RE DEFENDANT UMG RECORDINGS, INC.'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED CLASS ACTION COMPLAINT (DKT. 132)**

I. **Introduction**

On June 21, 2019, Soundgarden, Hole, Tom Whalley, Jane Petty and Steve Earle brought this action against UMG Recordings, Inc. ("UMG" or "Defendant"). Jane Petty ("Plaintiff") is the sole remaining plaintiff. The Second Amended Class Action Complaint ("SAC" (Dkt. 119-1)) advances two causes of action: (i) breach of contract and (ii) breach of contract -- implied covenant of good faith and fair dealing. *See* SAC. The contract at issue, which is attached as Exhibit 2 to the SAC, is the Exclusive Artist's Recording Agreement entered by Tom Petty and MCA Records, Inc. on February 8, 1984 (the "MCA Contract"). SAC, Ex. 2.

On May 18, 2020, UMG filed a motion to dismiss the SAC (the "Motion"). Dkt. 132. On June 2, 2020, Plaintiff filed an opposition (the "Opposition"). Dkt. 151. On June 9, 2020, UMG filed a reply (the "Reply"). Dkt 162. On May 23, 2020, UMG filed an ex parte application for leave to file a supplemental brief in support of the Motion (the "Application to Supplement"). Dkt. 140-2. Plaintiff filed an opposition to the Application to Supplement. Dkt. 142.

On June 29, 2020, a hearing was held on the Motion. Dkt. 180. On October 2, 2020, the parties were ordered to file supplemental briefing on certain issues raised by the Motion. Dkt. 187. On October 23, 2020, Plaintiff and UMG each filed a supplemental brief. Dkt. 189, 191. The matter was then taken under submission.

For the reasons stated in this Order, the Application to Supplement is **GRANTED**. The Motion is **GRANTED** with prejudice, i.e., without leave to amend.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | LA CV19-05449 JAK (MRWx) | Date | March 29, 2021 |
|---|---|---|---|
| Title | Soundgarden, et al. v. UMG Recordings, Inc. | | |

**II.   Factual and Procedural Background**

    A.   FAC and Prior Order

On April 6, 2020, UMG's Motion to Dismiss Plaintiffs' First Amended Class Action Complaint (the "FAC" (Dkt. 25)) was granted. Dkt. 99 (the "Prior Order"). The Prior Order addressed, *inter alia*, UMG's argument that Jane Petty lacks standing because the FAC did not plead sufficient facts to show she is an assignee of the rights of Tom Petty. *See* Dkt. 99 at 11 (citing Dkt. 36-1 at 32-33). The Prior Order stated that the "FAC does not attach a copy of the written assignment." *Id.* at 12. Therefore, based solely on the allegations in the FAC, the Prior Order determined that an assignment of rights from Tom Petty to Jane Petty was adequately alleged for five of the six causes of action asserted by the FAC. *Id.* at 11-13.

    B.   Allegations in the SAC

The SAC alleges that Tom Petty and Jane Petty entered into an October 21, 1998 agreement in connection with the termination of their marriage (the "Marital Settlement"). SAC ¶ 18. The SAC alleges that the Marital Settlement identified the following as some of the community property at issue: (i) Tom Petty's "musical compositions, or portions thereof, including the right to receive income from the licensing and other exploitation thereof" for the period from March 26, 1974, to January 18, 1996 (the "Time of Marriage"), (ii) Tom Petty's "'right to receive record royalties and other income with respect to sound recordings' listed on an exhibit comprising 'the entire list of sound recordings that have been commercially exploited during the Time of Marriage and that are subject to any of the agreements entered into during the Time of Marriage,' including with MCA, Records, Inc.," and (iii) the "rights to royalties on alternate recordings of previously exploited compositions." SAC ¶ 18 (quoting Marital Settlement).

The SAC alleges that the Marital Settlement provided that Tom Petty and Jane Petty would each own an "undivided one-half (1/2) interest as tenants-in-common of said assets." *Id.* (quoting Marital Settlement). "As a result," the SAC alleges that "Jane Petty is the owner, assignee, and successor-in-interest holding the right to enforce 100% of (and to retain 50% of the proceeds of) Tom Petty's contractual rights related to the master recordings specified in the [Marital Settlement], including some of those at issue in this action." *Id.*

    C.   Relevant Agreements

        1.   Marital Settlement

A copy of the Marital Settlement is not attached to the SAC. In support of the Motion, UMG requested judicial notice of the Marital Settlement, a copy of which was filed in support of the Motion. Dkt. 132-2.

The Marital Settlement identifies as community property certain "musical compositions," which are described as follows:

> All musical compositions, or portions thereof, including the right to receive income from the licensing and other exploitation thereof, written, composed or created by [Tom Petty]

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV19-05449 JAK (MRWx) | Date | March 29, 2021 |
|---|---|---|---|
| Title | Soundgarden, et al. v. UMG Recordings, Inc. | | |

    and/or acquired by [Tom Petty] and [Jane Petty] or by [Tom Petty] . . . [during] the 'Time of Marriage' . . . .

Dkt. 134-1 at 7.

The Marital Settlement also identifies as community property, "Record Masters Owned by MCA Records, Inc. or By Warner Bros. Records, Inc.," which are described as:

    The right to receive record royalties and other income with respect to the sound recordings set forth on Exhibit B hereto and any audiovisual works containing any of such sound recordings that are owned by any third party.

Dkt. 134-1 at 8.

The Marital Settlement provides for a division of the Musical Compositions and the Record Masters (or "Master Recordings") in which Tom Petty and Jane Petty would each "have an undivided one-half (1/2) interest as tenants-in-common of said assets as of execution of this Agreement, together with earnings, interest and appreciation thereon to the date of actual distribution or further division as set forth hereafter." Dkt. 134-1 at 20-22.

The Marital Settlement cites Exhibit B as a list of sound recordings that "reflects the entire list of sound recordings that have been commercially exploited during the Time of Marriage and that are subject to any of the agreements entered into during the Time of Marriage between [Tom Petty] and MCA Records, Inc. (including the Exclusive Artist's Recording Agreement dated as of October 1, 1979, the Exclusive Artist's Recording Agreement dated as of February 8, 1984, and the Termination of Recording Agreement dated September 13, 1993)." Dkt. 134-1 at 21.

With respect to the Musical Compositions that were community property, the Marital Settlement provides that such Musical Compositions would be "subject to the Co-Publishing Agreement attached hereto and made a part hereof as Exhibit E." Dkt. 134-1 at 21.

With respect to the Record Masters, the Marital Settlement provides that "[s]uch sound recordings and audiovisual works are subject to the Net Income and Royalty Override Agreement attached hereto as Exhibit F." Dkt. 134-1 at 22. Exhibit F, the Net Income and Royalty Override Agreement (the "Override Agreement"), was not attached to the copy of the Marital Settlement initially filed in this action. *See* Dkt. 134-1. The copy of the Marital Settlement initially filed included Exhibits A through D, but did not include Exhibit E -- the Co-Publishing Agreement -- or the Override Agreement. *See* Dkt. 134-1 at 102.

    2.    <u>Override Agreement</u>

On May 18, 2020, which is the same day on which the Motion was filed, UMG received a copy of the Override Agreement for the first time. *See* Declaration of Scott A. Edelman, Dkt. 140-4 ¶ 2. The copy produced to UMG's Counsel was a "non-executed copy." *Id*. UMG's counsel then requested, and later received, a "signed copy" from counsel representing Tom Petty's Estate, which is not a party in this action. *Id*. ¶ 3.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV19-05449 JAK (MRWx) | Date | March 29, 2021 |
| Title | Soundgarden, et al. v. UMG Recordings, Inc. | | |

The Override Agreement defines "Community Work" as, "individually and collectively, the Petty Masters, Petty Videos, Third Party Masters, Third Party Videos and any other manifestation of Tom's work product during the Time of Marriage (other than musical compositions which are subject to the Co-Publishing Agreement between Tom and Jane being executed concurrently herewith)." Dkt. 140-6 at 2.[1]

"Petty Masters" are defined as "all Sound Recordings owned by Tom and/or a Related Company that were . . . commercially exploited during the Time of Marriage." Dkt. 140-6 at 5. "Petty Videos" are defined as "all Audiovisual Recordings owned by Tom and/or a Related Company that were created during the Time of Marriage." *Id.* "Sound Recordings" are defined as "works that result from the fixation of a series of musical, spoken, or other sounds . . . regardless of the material objects, such as disks, tapes, or other phonorecords, in which they are embodied." *Id.* at 6.

The Override Agreement provides that Tom Petty and Jane Petty "shall each own, as tenants-in-common, fifty percent (50%) of the Petty Videos and Petty Masters, in perpetuity, including the copyrights in and to the Community Works owned by Tom . . . ." Dkt. 140-6 at 7. The Override Agreement also provides for "Administration Rights." *Id.* at 8. Jane Petty granted to Tom Petty "the exclusive right to exploit and otherwise use, and the right to license and otherwise authorize any third party the right to exploit and otherwise use any and all rights and interests in the Petty Videos and Petty Masters ('Administration Rights'), subject to the terms and restrictions set forth in [the Override] Agreement." *Id.*

Under the Override Agreement, the term "Third Party Agreements" is defined as "any and all agreements entered into by Tom or any Related Entity during the Time of Marriage . . . , including the MCA Agreement and the WB Agreement." Dkt. 140-6 at 6. The term "MCA Agreement" is defined as all agreements entered into during the Time of Marriage between Tom Petty and MCA Records, Inc., including the "Exclusive Artist's Recording Agreement dated as of February 8, 1984" (the "MCA Contract"). *Id.* at 5. As noted, a copy of the MCA Contract is attached to the SAC. *See* SAC, Ex. 2.

The Override Agreement expressly addressed such Third Party Agreements with respect to Administration Rights:

> Subject to the terms of this Agreement, as between Jane and Tom, with respect to each Third Party Agreement, Tom shall have the sole and exclusive right to (i) exercise any right [including any approval and consent rights, audit rights (subject to paragraph 7(d)(ii) below, etc.) and pursue any remedy thereunder,[2] (ii) amend, renegotiate or terminate such Third Party Agreement, (iii) prosecute, defend and settle any action or claim relating thereto, and (iv) refrain from any of the foregoing.

---

[1] The Override Agreement refers to Tom Petty and Jane Petty by their first names alone, as is customary in agreements that address spouses who share the same surname. Dkt. 140-6 at 2.
 UMG filed the entirety of the Override Agreement under seal. The corresponding application to seal is addressed in a separate Order. Dkt. 197. As stated there, sufficient good cause has not been shown for sealing those portions of the Override Agreement that are quoted and discussed in this Order.

[2] The Override Agreement includes the initial open bracket -- "[" -- but it does not include a closing bracket. This typographical error in the Override Agreement is not material to assessing the meaning of this provision.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV19-05449 JAK (MRWx) | Date | March 29, 2021 |
| Title | Soundgarden, et al. v. UMG Recordings, Inc. | | |

Dkt. 140-6 at 9-10.

In a separate section, the Override Agreement provides that, as "between Jane and Tom, Tom shall have the sole and exclusive right to prosecute, defend and settle any third party action or claim relating to the Community Works and to prevent and restrain the infringement of copyright or other rights with respect to the Community Works . . . ." Dkt. 140-6 at 16.

The Override Agreement provides that the Marital Settlement, which includes the Override Agreement, "is intended by the parties hereto as a final expression of their understanding and agreement with respect to the subject matter hereof and as a complete and exclusive statement of the terms thereof, and all of said terms are incorporated by reference into the parties' Marital Settlement Agreement and made a part thereof in Family Court, Case Number BD 244032." Dkt. 140-6 at 22-23. The Override Agreement also states that it "shall inure to the benefit of and be binding on each of the parties hereto and upon their respective heirs, executors, administrators, successors-in-interest, assigns and legal representatives." *Id.* at 24.

**III.    The Supplemental Brief**

    A.    Background

As noted, the Motion was filed on May 18, 2020. Dkt. 132. On Friday, May 22, 2020, UMG filed an application for permission to file under seal the Application to Supplement. Dkt. 139. UMG filed, under seal, the proposed Application to Supplement (Dkt. 140-2) and its proposed supplemental brief (the "Supplemental Brief" (Dkt. 140-1)). UMG maintains that ex parte relief is appropriate because an unsigned copy of the Override Agreement was provided to UMG on the day on which the Motion was to be filed. Dkt. 140-2 at 2. Because the Override Agreement "directly addresses Plaintiff's lack of standing," UMG argues it is appropriate to grant it leave to file a supplemental brief to address the late-produced document. *Id.* The Application to Supplement notes that, although Plaintiff "does not oppose the relief [UMG] seek[s]," Plaintiff "does oppose seeking it on an *ex parte* basis." *Id.* at 3. The Application to Supplement states that there was some consultation with Plaintiff's Counsel, but UMG nevertheless elected to file the ex parte application. *Id.* at 7.

On May 26, 2020, Plaintiff filed an opposition to the Application to Supplement. Dkt. 142. Plaintiff argues that ex parte relief is inappropriate because Plaintiff was amenable to entering a neutral stipulation that would have permitted the filing of the Supplemental Brief. *Id.* at 3.

    B.    Analysis

Ex parte relief is warranted only when extraordinary conditions are presented. *See Mission Power Eng'g Co. v. Cont'l Cas. Co.*, 883 F. Supp. 488, 492 (C.D. Cal. 1995). The evidence must show that the moving party "will be irreparably prejudiced if the underlying motion is heard according to regular noticed motion procedures." *Id.* An ex parte application is "justified only when (1) there is a threat of immediate or irreparable injury; (2) there is danger that notice to the other party may result in the destruction of evidence or the party's flight; or (3) the party seeks a routine procedural order that cannot be obtained through a regularly noticed motion (i.e., to file an overlong brief or shorten the time within

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV19-05449 JAK (MRWx) | Date | March 29, 2021 |
|---|---|---|---|
| Title | Soundgarden, et al. v. UMG Recordings, Inc. | | |

which a motion may be brought).” *Horne v. Wells Fargo Bank, N.A.*, 969 F. Supp. 2d 1203, 1205 (C.D. Cal. 2013) (Morrow, J.).

On May 20, 2020, UMG's Counsel contacted Plaintiff's Counsel to discuss a potential stipulation to file a supplemental brief. Dkt. 140-8 at 5. Shortly thereafter, on May 20, 2020, Plaintiff's Counsel requested a copy of the proposed supplemental brief. *Id.* Two days later, on the Friday before the Memorial Day weekend, UMG's Counsel provided the proposed supplemental brief and a draft ex parte application that would be filed by the end of that day. *Id.* at 4. Plaintiff's Counsel promptly responded that day and again raised the possibility of entering a stipulation. *Id.* UMG's Counsel did not pursue the request for a stipulation, but stated that "it's important to submit an ex parte application to ensure that it crosses Judge Kronstadt's desk in time." *Id.* at 3. Plaintiff's Counsel again offered to stipulate to filing the supplemental brief that same day. *Id.* UMG's Counsel again declined to discuss proceeding with a potential stipulation. *Id.* at 2.

There is significant value when counsel work collaboratively. This includes discussing a potential stipulation as to necessary relief, rather than having one party request relief through an ex parte application. A stipulation in this matter may have allowed UMG to obtain the same relief it sought through the Application to Supplement. However, denying the Application to Supplement and requiring the parties to submit a stipulation would consume additional party and judicial resources without a material benefit. Therefore, in the interest of party and judicial efficiency, and based on the absence of a substantive opposition to the consideration of the Application to Supplement, the Application to Supplement is **GRANTED**; provided, however, that the Application for Permission to Seal Re: Ex Parte Application for Leave to File a Supplemental Brief in Support of [UMG's] Motion to Dismiss and Supplement the Record (Dkt. 139) is addressed in a separate order. Dkt. 197. The parties shall file the Application to Supplement in accordance with the sealing determinations made in that order.

**IV.     Analysis**

       A.     Legal Standards

              1.     Standing

"Article III of the Constitution confines the federal courts to adjudication of actual 'Cases' and 'Controversies.'" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 590 (1992). Because federal courts are courts of limited jurisdiction, "[a] federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears." *Stock W., Inc. v. Confederated Tribes*, 873 F.2d 1221, 1225 (9th Cir. 1989) (citing *California ex rel. Younger v. Andrus*, 608 F.2d 1247, 1249 (9th Cir. 1979)). "[T]he core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan*, 504 U.S. at 560 (citation omitted). If a plaintiff lacks standing under Article III, an action must be dismissed for lack of subject matter jurisdiction. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 109-10 (1998); *accord Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011). Accordingly, "[s]tanding 'is a jurisdictional element that must be satisfied prior to class certification.'" *Nelsen v. King Cty.*, 895 F.2d 1248, 1249 (9th Cir. 1990) (quoting *LaDuke v. Nelson*, 762 F.2d 1318, 1325 (9th Cir. 1985)).

To establish standing "requires that a plaintiff show '(1) it has suffered an injury in fact that is (a)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV19-05449 JAK (MRWx) | Date | March 29, 2021 |
| Title | Soundgarden, et al. v. UMG Recordings, Inc. | | |

concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'" *Krottner v. Starbucks Corp.*, 628 F.3d 1139, 1141 (9th Cir. 2010) (citation omitted) (first quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); and then quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000)).

"[I]f none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class." *O'Shea v. Littleton,* 414 U.S. 488, 494 (1974). "[T]he standing inquiry requires careful judicial examination of a complaint's allegations to ascertain whether the *particular plaintiff* is entitled to an adjudication of the *particular claims* asserted." *Or. Prescription Drug Monitoring Program v. DEA*, 860 F.3d 1228, 1233 (9th Cir. 2017) (emphasis in original) (quoting *Allen v. Wright*, 468 U.S. 737, 752 (1984), *abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377 (2014)). "In other words, Article III requires 'a plaintiff [to] demonstrate standing for each claim he seeks to press and for each form of relief that is sought.'" *Id.* (quoting *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008)). However, "at the pleading stage, allegations of jurisdictional fact need not be proven unless challenged." *New Gen, LLC v. Safe Cig, LLC*, 840 F.3d 606, 614 (9th Cir. 2016).

The basis for a motion to dismiss brought pursuant to Fed. R. Civ. P. 12(b)(1) is that the court lacks subject matter jurisdiction over the matter. *See, e.g.*, *Savage v. Glendale Union High Sch., Dist. No. 205, Maricpoa Cty*, 343 F.3d 1036, 1039-40 (9th Cir. 2003). A party who challenges jurisdiction pursuant to Rule 12(b)(1) may do so based on the face of the pleadings or by presenting extrinsic evidence. *See White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000) ("Rule 12(b)(1) jurisdictional attacks can be either facial or factual."). In considering such a motion, "the sufficiency of the pleadings to establish subject matter jurisdiction is determined by whether the movant brings a facial or factual challenge." *NewGen*, 840 F.3d at 614. "A facial attack accepts the truth of the plaintiff's allegations but asserts that they are insufficient on their face to invoke federal jurisdiction." *Id.* (quoting *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014)). By contrast, a factual attack "contests the *truth* of the plaintiff's factual allegations, usually by introducing evidence outside the pleadings." *Id.* (emphasis in original) (quoting *Leite*, 749 F.3d at 1121). "Only upon a factual attack does a plaintiff have an affirmative obligation to support jurisdictional allegations with proof. In contrast, a facial attack is easily remedied by leave to amend jurisdictional allegations pursuant to 28 U.S.C. § 1653." *Id.* (internal citation omitted).

"When the defendant raises a factual attack, the plaintiff must support her jurisdictional allegations with 'competent proof,' under the same evidentiary standard that governs in the summary judgment context." *Leite*, 749 F.3d at 1121 (internal citation omitted) (quoting *Hertz Corp. v. Friend*, 559 U.S. 77, 96-97 (2010)). "The plaintiff bears the burden of proving by a preponderance of the evidence that each of the requirements for subject-matter jurisdiction has been met. With one caveat, if the existence of jurisdiction turns on disputed factual issues, the district court may resolve those factual disputes itself." *Id.* at 1121-22 (internal citations omitted). The "one caveat" is "that a court must leave the resolution of material factual disputes to the trier of fact when the issue of subject-matter jurisdiction is intertwined with an element of the merits of the plaintiff's claim." *Id.* at 1122 n.3; *see also Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) (finding of genuinely disputed facts is inappropriate when jurisdictional issue and substantive issues are sufficiently intertwined).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV19-05449 JAK (MRWx) | Date | March 29, 2021 |
| Title | Soundgarden, et al. v. UMG Recordings, Inc. | | |

"When the jurisdictional motion 'involv[es] factual issues which also go to the merits,' a court should employ the standard applicable to a motion for summary judgment because 'resolution of [those] jurisdictional facts is akin to a decision on the merits.' In that posture, the moving party 'should prevail only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law.'" *Young v. United States*, 769 F.3d 1047, 1052 (9th Cir. 2014) (internal citation omitted) (quoting *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983)); *see also Bell v. Warden FCI Dublin*, No. 17-CV-07346-LHK, 2019 WL 1170780, at *11 (N.D. Cal. Mar. 13, 2019) (Koh, J.) (When factual questions are sufficiently intertwined with jurisdictional arguments, "a court cannot evaluate jurisdictional arguments without 'resol[ving] . . . factual issues which also go to the merits,' and so 'a resolution of the jurisdictional facts is akin to a decision on the merits.'" (quoting *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983))). "Because merits-related questions must be answered in addressing such a motion, the court places the burden of proof on the moving party, rather than the non-moving party." *Bell*, 2019 WL 1170780, at *11.

      2.      Assignment

Under federal law, an "assignee of a claim has standing to assert the injury in fact suffered by the assignor." *Namdy Consulting, Inc. v. UnitedHealthcare Ins. Co.*, No. CV 18-01283-RSWL-KS, 2019 WL 1470849, at *3 (C.D. Cal. Apr. 3, 2019) (quoting *Spinedex Physical Therapy USA Inc. v. United Healthcare of Ariz., Inc.*, 770 F.3d 1282, 1291 (9th Cir. 2014)). Under California law, "[t]he burden of proving an assignment falls upon the party asserting rights thereunder." *Heritage Pac. Fin., LLC v. Monroy*, 215 Cal. App. 4th 972, 988 (2013) (quoting *Cockerell v. Title Ins. & Trust Co.*, 42 Cal. 2d 284, 292 (1954)). "An assignment agreement 'must describe the subject matter of the assignment with sufficient particularity to identify the rights assigned.'" *Id.* (quoting *Mission Valley East, Inc. v. Cty. of Kern*, 120 Cal. App. 3d 89, 97 (1981)). "An assignment is 'a manifestation to another person by the owner of the right indicating his [or her] intention to transfer, without further action or manifestation of intention, the right to such other person, or to a third person.'" *Id.* (quoting *Cockerell*, 42 Cal. 2d at 291) (alteration in original). "While no particular form of assignment is required, it is essential to the assignment of a right that the assignor manifests an intention to transfer 'the right.'" *Id.* at 990 (quoting *Sunburst Bank v. Exec. Life Ins. Co.*, 24 Cal. App. 4th 1156, 1164 (1994)).

"An assignment of a right generally carries with it an assignment of other rights incident thereto." *Heritage*, 215 Cal. App. 4th at 990 (citing Cal. Civ. Code § 1084). "[I]ncidental rights may include certain ancillary causes of action but the assignment agreement 'must describe the subject matter of the assignment with sufficient particularity to identify the rights assigned.'" *Id.* at 991 (quoting *Mission Valley*, 120 Cal. App. 3d at 97). "[A] basic tenet of California contract law dictates that when a particular right or set of rights is defined in an assignment, additional rights not similarly defined or named cannot be considered part of the rights transferred." *Id.* (quoting *DC3 Entm't, LLC v. John Galt Entm't, Inc.*, 412 F. Supp. 2d 1125, 1144 (W.D. Wash. 2006)) (alteration and emphasis in original).

"[W]hen extrinsic evidence [is] not in conflict, interpretation of contract is question of law . . . ." *Wolf v. Walt Disney Pictures & Television*, 162 Cal. App. 4th 1107, 1134 (2008) (Perluss, J.) (citing *Parsons v. Bristol Development, Co.*, 62 Cal. 2d 861, 866 (1965)); *see also United Commercial Ins. Serv., Inc. v. Paymaster Corp.*, 962 F.2d 853, 856 (9th Cir. 1992) ("Under California law, the interpretation of a contract is a question of law subject to de novo review."). "It is . . . solely a judicial function to interpret a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV19-05449 JAK (MRWx) | Date | March 29, 2021 |
|---|---|---|---|
| Title | Soundgarden, et al. v. UMG Recordings, Inc. | | |

written instrument unless the interpretation turns upon the credibility of the extrinsic evidence." *Cachil Dehe Band of Wintun Indians of Colusa Indian Cmty. v. California*, 618 F.3d 1066, 1079 (9th Cir. 2010) (quoting *Parsons v. Bristol Dev. Co.*, 62 Cal.2d at 865).

    B.    Application

        1.    <u>Type of Rule 12(b)(1) Challenge</u>

The Opposition cites the Prior Order and its determination that the FAC -- although it did not include as an attachment a copy of any written assignment -- alleged adequately an assignment of rights sufficient to support standing. *See* Dkt. 151 at 8. For example, the Opposition argues that "UMG has provided no basis for reversing the Court's prior ruling." *Id.*; *see also id.* at 9-11. The Motion is not deemed a motion to reconsider the Prior Order. Nor would granting the Motion based on a finding of a lack of standing constitute a reversal of the Prior Order. The Prior Order assessed the facial challenge brought by UMG, and did not rely on a review of the terms of the Marital Settlement or Override Agreement. *See* Dkt. 99 at 11-13.

The Motion presents a new challenge to the claims asserted in this action. In support of the Motion, UMG argues that the Marital Settlement "contains no language 'assigning' any such rights to [Jane] Petty." Dkt. 132-1 at 13. Thus, the Motion relies on the Marital Settlement to dispute the truth of the allegations in the SAC as to the rights assigned to Jane Petty. Similarly, through the Supplemental Brief, UMG challenges the standing allegations based on the language of the Override Agreement that UMG claims is "[i]n direct conflict with Plaintiff's allegations regarding her rights under the Marital Settlement." Dkt. 140-1 at 2. For these reasons, the Motion is construed as a factual challenge to Plaintiff's standing. In presenting such a factual challenge, evidence that is not presented with a complaint, and that is beyond its allegations, may be considered. Accordingly, the Marital Settlement and Override Agreement are considered in this Order in addressing the Motion.

The issue of assignment goes to both the merits of the action and jurisdiction. To prevail on the merits, Jane Petty would need to show by a preponderance of the evidence that there was an assignment of rights. *See Nijjar v. Gen. Star Indem. Co.*, No. CV 12-08148 DDP JCGX, 2014 WL 810899, at *2 (C.D. Cal. Feb. 28, 2014) ("The burden of proving an assignment falls upon the party asserting rights thereunder.") (quoting *Cockerell v. Title Ins. & Trust Co.*, 42 Cal.2d 284 (Cal. 1954)). However, assignment is also relevant to whether Plaintiff has standing. *Id.* ("[U]nless [the plaintiff] was validly assigned [the third-party's] rights under the [contract-at-issue], he has no standing to sue on behalf of himself under the [contract-at-issue]."); *Namdy*, 2018 WL 6430119 at *2 (plaintiff lacked standing "due to [its] failure to allege [third-parties] assigned the rights [it] is asserting"); *Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp., Inc.*, 99 F. Supp. 3d 1110, 1133 (C.D. Cal. 2015) (plaintiffs lacked standing for breach of fiduciary duty claim because, in assignment from third party, "[n]owhere is there any mention of a transfer of rights that can be read to contemplate the right to bring suit to redress purported breaches of fiduciary duty."). Because assignment is an issue that concerns both the merits and jurisdiction, findings as to genuinely disputed facts are not appropriate. *Leite*, 749 F.3d at 1122 n.3; *see also Safe Air for Everyone*, 373 F.3d at 1039. Therefore, UMG may "'prevail only if the material jurisdictional facts are not in dispute and [UMG] is entitled to prevail as a matter of law.'" *Young* 769 F.3d at 1052 (quoting *Augustine*, 704 F.2d at 1077 ("In ruling on a jurisdictional motion involving factual issues which also go to the merits, the trial court should employ the standard applicable to a motion for

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV19-05449 JAK (MRWx) | Date | March 29, 2021 |
|---|---|---|---|
| Title | Soundgarden, et al. v. UMG Recordings, Inc. | | |

summary judgment, as a resolution of the jurisdictional facts is akin to a decision on the merits.")). If that standard is not met, the jurisdictional facts must be determined at trial by the trier of fact. *Augustine*, 704 F.2d at 1077.

  2. <u>Tom Petty's Rights</u>

The claims asserted in the SAC are premised on the alleged right of Plaintiff to sue for a breach of the MCA Contract. Jane Petty is not a party to the MCA Contract. Based on the present allegations in the SAC, Plaintiff's standing depends on the Marital Settlement and whether it provides Plaintiff the right to sue for an alleged breach of the MCA Contract. The SAC alleges that, as a result of the allocation of certain community property under the terms of the Marital Settlement, "Jane Petty is the owner, assignee, and successor-in-interest holding the right to enforce 100% of (and to retain 50% of the proceeds of) Tom Petty's contractual rights related to the master recordings specified in the divorce agreement, including some of those at issue in this action." SAC ¶ 18. Thus, this inquiry focuses on what "contractual rights" as to the MCA Contract Jane Petty received through the Marital Settlement and Override Agreement.

As to payment under the MCA Contract, the Override Agreement provides that Tom Petty "shall have the sole and exclusive right to collect all Gross Income[3], including any and all monies payable pursuant to Third Party Agreements." Dkt. 140-6 at 11. The MCA Contract is one of the defined Third Party Agreements. *Id.* at 5-6. Under the Override Agreement, Tom Petty was obligated to pay Jane Petty 50% of Net Income from, *inter alia*, the MCA Contract. *Id.* at 11. Net Income is a defined term in the Override Agreement. *Id.* at 5.

As to "Administration Rights" related to the MCA Contract and Third Party Agreements, the Override Agreement provides that Tom Petty had certain exclusive rights:

> Subject to the terms of this Agreement, as between Jane and Tom, with respect to each Third Party Agreement, Tom shall have the sole and exclusive right to (i) exercise any right [including any approval and consent rights, audit rights (subject to paragraph 7(d)(ii) below, etc.) and pursue any remedy thereunder, (ii) amend, renegotiate or terminate such Third Party Agreement, (iii) prosecute, defend and settle any action or claim relating thereto, and (iv) refrain from any of the foregoing.

Dkt. 140-6 at 9-10.

In sum, under the Marital Settlement and the Override Agreement, which is an exhibit to the Marital Settlement that is incorporated by reference, Tom Petty retained the "sole and exclusive right": (i) "to collect all Gross Income, including any and all monies payable pursuant to Third Party Agreements" (Dkt. 140-6 at 11); and (ii) to exercise rights, pursue remedies, prosecute claims or refrain from such action (Dkt. 140-6 at 9-10).

---

[3] "Gross Income" is defined in the Override Agreement as including, *inter alia*, "record royalties payable with respect to exploitation of Community Works pursuant to the MCA [Contract] or the WB Agreement (but specifically excluding any income relating to musical compositions embodied on the Community Works, which income is provided for in the Co-Publishing Agreement) . . . ." Dkt. 140-6 at 4.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV19-05449 JAK (MRWx) | Date | March 29, 2021 |
|---|---|---|---|
| Title | Soundgarden, et al. v. UMG Recordings, Inc. | | |

The allegations in the SAC are not consistent with these provisions. The SAC alleges that Jane Petty "is the owner, assignee, and successor-in-interest holding the right to enforce 100% of (and to retain 50% of the proceeds of) Tom Petty's contractual rights related to the master recordings specified in the divorce agreement, including some of those at issue in this action." SAC ¶ 18. However, the Override Agreement states that Tom Petty holds 100% of the right to enforce the MCA Contract related to the Master Recordings, and that Jane Petty is entitled to 50% of the Net Income from Tom Petty after Tom Petty receives the Gross Income under the MCA Contract.

      3.      <u>Interaction between Override Agreement and Marital Settlement</u>

Plaintiff argues that the Marital Settlement identifies Master Recordings as community property. *See* Dkt. 151 at 13 (citing Marital Settlement ¶ 3.3(C)). As to Master Recordings, the Marital Settlement provides that the "right to receive record royalties and other income with respect to the sound recordings" would be community property." Dkt. 134-1 at 8-9 (¶ 2.3(E)). However, at the end of ¶ 3.3(C), which allocates the community property, the Marital Settlement provides that the Master Recordings "are subject to" the Override Agreement. Dkt. 134-1 at 22. Thus, that the Marital Settlement provides for an equal division of the Master Recordings as community property is not dispositive of the issue here. Rather, this issue is also tethered to the terms of the Override Agreement, to which that division is "subject." As discussed above, the Override Agreement grants to Tom Petty the "sole and exclusive right" to enforce the contract and to collect gross income.

      4.      <u>Plaintiff as Claimed Fiduciary</u>

Plaintiff argues that ¶ 4.1 of the Marital Settlement enables Jane Petty to bring claims as a fiduciary for Tom Petty. Dkt. 151 at 13. The Marital Settlement cites Cal. Fam. Code §§ 721 and 1100. Dkt. 134-1 at 35. Section 721 states that, "in transactions between themselves," spouses owe a fiduciary relationship to one another. Section 1100 imposes certain restrictions on the use and disposition of community property. It provides that Section 721 shall apply "until such time as the assets and liabilities have been divided by the parties or by a court." However, Plaintiff does not persuasively explain how the citations in the Marital Settlement to Sections 721 and 1100 authorize Jane Petty, as a fiduciary, to bring a breach of contract claim based on the MCA Contracts after the division of community property has been completed, and when Jane Petty and Tom Petty have not been spouses for many years.

      5.      <u>Plaintiff's Claim to a "Grant" of Rights</u>

Plaintiff also argues that the Override Agreement confirms that the division of community property in the Marital Settlement grants her standing. *See* Dkt. 151 at 13-14. Thus, Plaintiff contends that, because the Override Agreement provides that Jane Petty "grant[s]" Tom Petty administration rights, Jane Petty necessarily "was already assigned enforcement rights" and that an interpretation to the contrary would make the administration terms superfluous. *Id.* This argument is unpersuasive. As an initial matter, the Override Agreement section quoted by Plaintiff -- that Jane Petty "grants" to Tom Petty certain rights -- is ¶ 4(a). That section relates to rights and interests in the Petty Videos and Petty Masters and does not refer to the MCA Contract or Third Party Agreements. Dkt. 140-6 at 8-9. The more relevant language is in ¶ 4(b) of the Override Agreement, which addresses rights under each Third Party Agreement, *e.g.,* the MCA Contract. *Id.* at 9-10. That paragraph, which includes the clause about Tom Petty's "sole and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV19-05449 JAK (MRWx) | Date | March 29, 2021 |
|---|---|---|---|
| Title | Soundgarden, et al. v. UMG Recordings, Inc. | | |

exclusive right" with respect to the MCA Contract, has been discussed in this Order and is not a "grant" of rights. Instead, it provides that Tom Petty "shall have" the "sole and exclusive right" to exercise rights under the MCA Contract. Dkt. 140-6 at 9.

Even if the Marital Settlement defined a contractual right to enforcement of community property that is to be divided -- as distinct from the right to royalties from such Third Party Agreements -- the Override Agreement provides that Jane Petty no longer has such rights of enforcement. Instead, Tom Petty "shall have the sole and exclusive right" to, *inter alia*, "prosecute, defend and settle any action or claim relating" to the MCA Contract or "refrain from any of the foregoing." Dkt. 140-6 at 9-10 (¶ 4(b)). Further, even if these terms of the Override Agreement "presume that Jane Petty was already assigned enforcement rights" (Dkt. 151 at 14), Plaintiff fails to explain how the "sole and exclusive right" provision does not constitute a relinquishment of such enforcement rights as part of the negotiated allocation of Community Property and corresponding rights. Plaintiff's argument that such an interpretation would render the administration-related terms "superfluous and unnecessary" is unpersuasive (Dkt. 151 at 14). The Administration Rights section of the Override Agreement clarifies and explains the division of Community Property. This includes, *inter alia*, how the ancillary rights related to such property would be administered. Such a clarification is not superfluous.

### 6. The Litigation Control Argument

Plaintiff also argues that the provision in the Override Agreement that "contemplates circumstances under which Jane Petty might take over litigation initiated by Tom Petty" supports the conclusion that Jane Petty was "already assigned enforcement rights." Dkt. 151 at 14 (citing Override Agreement ¶ 8(c)(ii)). Paragraph 8 of the Override Agreement addresses "Further Documents" and "Actions." Dkt. 140-6 at 16-17. Paragraph 8(b) of the Override Agreement provides that, "[a]s between Jane and Tom, Tom shall have the sole and exclusive right to prosecute, defend and settle any third party action or claim relating to the Community Works . . . ." *Id.* at 16. Paragraph 8(c) addresses Jane Petty's involvement in settlement of litigation. Three alternatives are addressed: (i) Tom Petty approves a settlement and Jane Petty does not respond; (ii) Tom Petty approves a settlement that Jane does not approve; and (iii) Tom Petty disapproves a settlement that Jane approves. Dkt. 140-6 at 17-18.

Under either of the latter two events, the party who disapproves would be responsible for liability in excess of the approved settlement amount in the event of such a loss, and entitled to recovery in excess of the approved settlement amount in the event of success. *Id.* This section concludes by providing that "whoever takes over the litigation has the sole right to direct such litigation without consulting with the other party." *Id.* at 18. Thus, Jane Petty could "take[] over the litigation" only in the situation in which Tom Petty approved of a settlement and Jane Petty did not. *See id.* Such a provision does not authorize Jane Petty to initiate an action and does not support Plaintiff's contention that it amounts to an assignment of a contractual right of enforcement sufficient to confer standing to bring an action.

### 7. The Life-Limited Rights Argument

Plaintiff maintains that the "administration-related provisions" of the Override Agreement restricted Plaintiff's rights only so long as Tom Petty "retained and was able to exercise those rights personally." Dkt. 151 at 14. Plaintiff contends that, because the Override Agreement provisions are described "as

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV19-05449 JAK (MRWx) | Date | March 29, 2021 |
| Title | Soundgarden, et al. v. UMG Recordings, Inc. | | |

between Jane and Tom," the administrative rights afforded to Tom Petty relied on his "personal skill, taste, and bargaining ability" and that such provisions "have no further effect following Tom Petty's death in 2017." *Id.* at 14-15.

This position is not persuasive. *First*, the Override Agreement expressly authorized Tom Petty to "assign this Agreement and/or some or all of his rights and obligations hereunder to any person or entity." Dkt. 140-6 at 20. This language is not consistent with the proposed interpretation that Tom Petty's particular personal skill was required for the execution of his contractual rights. *Second*, the Override Agreement specifically provides that it "shall inure to the benefit of and be binding on each of the parties hereto and upon their respective heirs, executors, administrators, successors-in-interest, assigns and legal representatives." *Id.* at 24. The Marital Settlement includes a nearly identical provision. *See* Dkt. 134-1 at 66. This language supports the view that Tom Petty's rights to initial payment of Gross Income under the MCA Contract and to enforce the MCA Contract inured to the benefit of his heirs, and that the allocation of community property and related rights continues to bind Jane Petty.

        8.       <u>The Breach of Assignment Argument</u>

Plaintiff contends that, even if she "somehow breached" the Override Agreement by initiating this action, such a breach "would have no bearing on standing," because the "main body" of the Marital Settlement assigned Jane Petty "UMG contract enforcement rights." Dkt. 151 at 15. Consequently, Plaintiff argues that the "claimed breach" of the Override Agreement "would be a matter solely between Jane Petty and Tom Petty's heirs, to be litigated (if at all) in the family court" and that "no such breach has ever been alleged by Tom Petty's heirs." *Id.*

This position is also unpersuasive. *First*, the Override Agreement is an exhibit to the Marital Settlement and is expressly referenced in the Marital Settlement. The Marital Settlement describes references to "this Agreement" as "includ[ing] all exhibits attached hereto, unless specified otherwise." Dkt. 134-1 at 69. Plaintiff fails to show how the "main body" of the Marital Settlement can provide a sufficient assignment of contractual rights to confer standing when the Override Agreement, which is a component of the Marital Settlement, expressly allocates such contractual rights to Tom Petty, and the division of community property as to the Master Recordings is "subject to" the Override Agreement.

*Second*, the issue presented is not whether Plaintiff has "breached" the Override Agreement and Marital Settlement. The Marital Settlement and Override Agreement allocate, *inter alia*, property and contractual rights. As the Marital Settlement expressly provides: "It is understood and agreed that this instrument is intended to be, shall be and is a sufficient deed, conveyance, assignment, grant, transfer and bill of sale, each to the other, of any and all such rights, title, interests, claims and demands of every nature, all and singular, covered by this Agreement." Dkt. 134-1 at 70. The question here is whether Plaintiff has the contractual right to enforce the MCA Contract by bringing this action. The answer to that question depends on whether the Marital Settlement and Override Agreement assigned that right to Plaintiff. That question of interpretation is one of law appropriate for resolution in this action. Such an assessment is necessary to determine whether Plaintiff has the necessary contractual rights to bring this action.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV19-05449 JAK (MRWx) | Date | March 29, 2021 |
| Title | Soundgarden, et al. v. UMG Recordings, Inc. | | |

       9.       <u>Implied Assignment</u>

In the alternative, Plaintiff argues that she can "Amend, if Necessary, to Allege UMG's and the Tom Petty Estate's Admission of Her Current Shared Rights." Dkt. 151 at 15-16. Plaintiff contends that a "crucial admission" has been made by UMG and Tom Petty's Estate. *Id.* at 16. On September 1, 2018, the Thomas Earl Petty Administrative Trust, Warner Bros. Records, Inc. and Geffen Records, a Division of UMG Recordings, Inc. entered into an agreement related to a greatest hits compilation (the "2018 Agreement"). Dkt. 151-2 at 2. The 2018 Agreement included a provision that identified Jane Petty as "the co-owner and co-administrator of rights in and to certain sound recordings and music compositions." *Id.* at 17. That provision states that Jane Petty "shall look exclusively to the Trust for all monies to which the undersigned is entitled arising from the exploitation by Geffen and Warner of the Joint Works pursuant to the Agreement." *Id.* Plaintiff argues that this is "an admission by UMG of Jane Petty's shared administrative rights following Tom Petty's death." Dkt. 151 at 16. Plaintiff's supplemental brief argues that the provision supports a finding of an implied assignment. Dkt. 189 at 8. UMG responds that the provision confirms that Plaintiff must look to the Petty Trust for compensation and that Plaintiff has "no right to sue UMG." Dkt. 162-1 at 9.

Plaintiff's argument is unpersuasive. The Marital Settlement is a fully integrated agreement. Dkt. 134-1 at 69. It constituted the "entire agreement between the parties." *Id.* Reference to Jane Petty in 2018 as a "co-administrator" does not reflect an intent to amend the Marital Settlement to expand the scope of the assignment of rights to Jane Petty or to provide Jane Petty with the contractual right of enforcement that is at issue in this action. The Override Agreement did provide Jane Petty some limited administration rights, including consultation with Tom Petty on exploitation of Petty Videos and Petty Masters (¶ 4(a)), limited audit rights (¶ 7(d)(ii)), and limited rights, discussed previously, related to settlement and litigation management (¶ 8(c)). *See* Dkt. 140-5. Moreover, as discussed above, the Marital Settlement divided community property that included Master Recordings and Musical Compositions, such that Jane Petty was a tenant-in-common. However, that division was subject to the Override Agreement that specifically allocated the right to compensation on the MCA Contract and the right to enforce rights under the MCA Contract. In short, Jane Petty is accurately identified as a co-owner or co-administrator because the Marital Settlement and Override Agreement each provided her with some co-ownership and co-administration rights. The 2018 Agreement's identification of Jane Petty as the "co-owner and co-administrator of rights in and to certain sound recordings and music compositions" (Dkt. 151-2 at 17) does not show either that the scope of the assignment in the Marital Settlement and Override Agreement is as broad as Plaintiff contends or that UMG has admitted that Plaintiff has sufficient contractual rights to bring this action.

Plaintiff argues an implied assignment may be inferred based on statements by Adria Petty, Tom Petty's daughter, or Dana Petty, Tom Petty's widow. At her deposition, Adria Petty testified as follows:

> Q: Were you --
> A: You know, I don't -- I -- I work on the Tom Petty side of the Tom Petty catalog, you know, like, I want to make money for UMG. I don't want to get in fights with UMG. I don't want to be here.
> Q: Were you opposed to her filing the lawsuit?
> A: No. I didn't express an opinion one way or the other because Petty women make up their own minds.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV19-05449 JAK (MRWx) | Date | March 29, 2021 |
|---|---|---|---|
| Title | Soundgarden, et al. v. UMG Recordings, Inc. | | |

> Q: Whether you expressed it to her or not, in your own -- in your own mind, did you -- were you opposed to her filing the lawsuit?
> A: I told you I didn't really give this lawsuit any consideration until you came here in the middle of the night and woke me and my daughter up.
> Q: You're talking about when the process server came?
> A: Yeah.

Dkt. 151-4 at 3.

Plaintiff contends that Adria Petty holds a one-third interest in the Estate. Dkt. 189 at 8. Plaintiff argues the "testimony supports the conclusion that, even if UMG's view of the world is somehow right that Mr. Petty's divorce papers left his ex-wife with rights to a royalty stream but no ability to enforce those rights, the Estate controlled by the Petty's daughters intended to change that unequal, and misogynistic, arrangement." Dkt. 189 at 9.

Plaintiff contends that Dana Petty also holds a separate one-third interest in the Estate. Dkt. 189 at 9. Dana Petty declares, "I do not support this litigation against UMG." Dkt. 144-3 ¶ 4. Plaintiff nonetheless argues that the declaration by Dana Petty "purposefully and carefully nowhere states that Ms. Petty lacks the right to pursue her claims against UMG." Dkt. 189 at 9.

Neither the deposition of Adria Petty nor the declaration of Dana Petty supports an inference that there was an implied assignment to Jane Petty. Adria Petty states she "didn't express an opinion" on the filing of the lawsuit and "didn't really give this lawsuit any consideration." Dkt. 151-4 at 3. Dana Petty expressly declares her opposition to this action. Dkt. 144-3 ¶ 4. This evidence does not support an inference of an implied assignment. Accordingly, it is insufficient to create a genuine dispute of fact as to whether there was an implied assignment.

\*      \*      \*

The interpretation of the Marital Settlement and Override Agreement is a question of law. Further, UMG has demonstrated adequately that there is not a genuine dispute of material fact as to the interpretation of the Marital Settlement, Override Agreement and 2018 Agreement regarding the assignment of rights to Jane Petty related to the MCA Contracts. These agreements demonstrate, as a matter of law, that the scope of the rights assigned to Jane Petty by Tom Petty did not include contractual rights to bring a breach of contract action against UMG based on the MCA Contract. Therefore, Plaintiff lacks standing. Accordingly, this action must be dismissed for lack of jurisdiction, and it is unnecessary to address the remaining matters raised in the Motion.

### V. Leave to Amend

If a motion to dismiss is granted, the court should "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). Although this policy is to be applied "with extreme liberality," *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001) (quoting *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990)), allowing leave to amend is inappropriate in circumstances where litigants have failed to cure previously identified deficiencies, or where

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV19-05449 JAK (MRWx) | Date | March 29, 2021 |
|---|---|---|---|
| Title | Soundgarden, et al. v. UMG Recordings, Inc. | | |

amendment would be futile, *see Foman v. Davis*, 371 U.S. 178, 182 (1962); *Allen v. City of Beverly Hills*, 911 F.2d 367, 374 (9th Cir. 1990).

As noted, Plaintiff argues that she "Can Amend, if Necessary, to Allege UMG's and the Tom Petty Estate's Admission of her Current Shared Rights." Dkt. 151 at 15-16. This argument is premised on the alleged "admission" by UMG and Tom Petty's Estate in their 2018 agreement. As described above, this argument is not persuasive. Thus, it would be futile to grant Plaintiff leave to amend based on this theory.

Plaintiff's Supplemental Brief argues that discovery is incomplete. Dkt. 189 at 9. It states that depositions have not been taken of Dana Petty, who is sole trustee of the Thomas Early Petty Administrative Trust, and Larry Jenkins, who is a consultant to Dana Petty in matters relating to the Trust's music rights. *Id.*; Dkt. 144-3 ¶¶ 2, 4. It argues that depositions from these individuals and from the Estate entity "would only further confirm the Estate's intent to assign lawsuit rights to" Jane Petty. *Id.*

At the hearing, Plaintiff's counsel stated Plaintiff would "want to pursue further discovery about the [E]state's position and objection or lack thereof to Jane asserting the claim. Our position is the agreement itself, the body of the divorce agreement, contains sufficient language of assignment. And to the extent the [O]verride [A]greement limits Jane Petty's rights, that could be waived by the [E]state. And so we'd want to take more discovery on that." Dkt. 192-1 at 7.

UMG responds that "[f]urther discovery would be a fishing expedition in barren waters." In December 2019, UMG promulgated a request for production that sought "ALL DOCUMENTS that comprise or RELATE TO any alleged rights under which Jane Petty seeks recovery in this lawsuit, including but not limited to the "written assignment" referenced in paragraph 9 of the First Amended Complaint." Dkt. 192-4 at 8. UMG states that, in response, Plaintiff produced the Marital Settlement and Override Agreement." Dkt. 191 at 13. UMG contends that, "[i]f there were any other relevant existing documents that showed an explicit or implicit assignment, Plaintiff would have produced them." *Id.*

Plaintiff brought this action in June 2019. Dkt. 1. None of the three versions of the complaint, alleged an implied assignment. Dkt. 1 ¶ 9; Dkt. 25 ¶ 9; SAC ¶ 18. Instead, Plaintiff alleged that she received an assignment through the Marital Settlement. Dkt. 25 ¶ 9; SAC ¶ 18. That allegation fails as a matter of law. Plaintiff now contends that there was an implied assignment by the Petty Estate. This new argument is not linked to any prior allegation. Further, the evidence advanced by Plaintiff is consistent with the absence of an implied assignment.

The Override Agreement provides, "This Agreement cannot be canceled, modified, amended or waived, in part or in full, in any manner except by an instrument in writing signed by the party to be charged or by the Family Law Court Judge. . . . " Dkt. 140-6 at 23. By these terms, any modification or waiver of the provisions in the Override Agreement must be in writing. It is not plausible that there was a written assignment of additional rights to Plaintiff about which she has no knowledge. Furthermore, although Plaintiff seeks the depositions of Dana Petty and Larry Jenkins, there is no showing that either would generate evidence regarding an implied assignment. Accordingly, granting Plaintiff leave to file a fourth complaint would be futile.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV19-05449 JAK (MRWx) | Date | March 29, 2021 |
|---|---|---|---|
| Title | Soundgarden, et al. v. UMG Recordings, Inc. | | |

**VI.   Conclusion**

For the reasons stated in this Order, the Application to Supplement is **GRANTED**. The Motion is **GRANTED** with prejudice, i.e., without leave to amend.

Plaintiff's Motion for Class Certification (Dkt. 103-2) is **MOOT**. *See Limpin v. Astrue*, No. 08CV1394 JM (RBB), 2009 WL 166685, at *1 (S.D. Cal. Jan. 20, 2009) (motion for class certification moot where action dismissed for lack of subject matter jurisdiction). There is not presently a hearing date for UMG's "Motion for Sanctions Pursuant to Rule 11, 28 U.S.C. § 1927, and the Court's Inherent Power" (the "Motion for Sanctions" (Dkt. 175-1)). On September 28, 2020, the parties stipulated to continue -- until after the issuance of this Order -- the deadline for the filing of an opposition to, and reply in support of, the Motion for Sanctions. Dkt. 186. The Stipulation was approved. Dkt. 188. However, the same day that the Stipulation was filed, Plaintiff filed an opposition to the Motion for Sanctions. Dkt. 186. Therefore, the only deadline that remains is one for UMG to file a reply in support of the Motion for Sanctions. UMG shall file such a reply on or before April 19, 2021. Based upon a review of the completed briefing, a determination will be made as to whether to set the matter for a hearing, or take it under submission. A corresponding order will then issue.

**IT IS SO ORDERED.**

|  | : |
|---|---|
| Initials of Preparer | TJ |